JUDGE PRYOR
delivered the opinion of the court.
The administrators of the goods, etc., of Z. M. P. Frazer, deceased, instituted an action in equity in the Metcalfe Circuit Court for the purpose of settling the estate of their intestate, and as the personal estate was insufficient for the payment of debts, asked a sale of his land or so much as might be necessary for that purpose. His widow and children were made defendants to the action.
During the progress of the case Lewis H. Frazer, one of the administrators, who was also the administrator of Thomas A. R. Frazer, deceased, presented a note executed by the deceased, Z. M. P. Frazer, to himself (Lewis H. Frazer) as administrator of Thomas A. R. Frazer for the sum of $113, dated Oct. 16, 1856, and due twelve months after date.
It being doubtful whether the land was of sufficient value to pay the debts, the appellant, Lewis H. Frazer, as administrator of Thomas A. R. Frazer, sought by an appropriate pleading to make the homestead claimed by the widow liable for the debt, the note having been executed prior to the passage of the homestead law.
The note filed with the cross-petition of the appellant had indorsed upon it two credits, one for $40, dated 25th of December, 1862, and the other for $10, paid the 20th of October, 1871. No signature was appended to either indorsement evidencing the payment, nor is there any proof in the record showing by whom the payments were made, except as to the credit of $10, entered on the 20th of October, 1871.
The widow and infant children interposed several defenses, and among them the plea of the statute of limitations, and also a denial of any payment on the note of their intestate.
It is conceded that the credit of ten dollars was entered by the appellant after the death of the obligor, by reason of some supposed claim of the estate of the latter against the estate of Thomas A. R. Frazer. The only question in the case is, the *400 widow and children having denied that the payment as indorsed on the 25th of December, 1862, was made by their intestate, was it incumbent on the appellant to show that the obligor made the payment, or was the indorsement, in the absence of opposing proof, evidence sufficient to establish that fact?
It is insisted by counsel for appellant that the possession of the note with the ancient indorsement upon it is prima facie evidence of the facts recited in it, and therefore the payment suspended the operation of the statute from the maturity of the note to the date of the credit.
The rule stated by Greenleaf, in his work on Evidence (1 vol., section 121), is relied on in support of this position, and, it must be conceded, conduces to sustain the views of counsel. That author says: “The time when the indorsement was made is a fact to be settled by the jury, and to this end the writing must be laid before them. If there is no evidence to the contrary, the presumption is that the indorsement was made' at the time it purports to bear date, and the burden of proving the date to be false lies on the other party.”
In referring to the cases in which the indorsements were admitted as part of the res gestae, the learned author says: “The grounds of these decisions are not stated in any of the reports, but it may be presumed that the reasoning on the side of the prevailing party was approved, namely, that the indorsement being made at the time it purported to bear date, and being according to the usual and ordinary course of business in such cases, and which it was not for the interest of the obligee at that time to make, was entitled to be considered by the jury; and that from it, in the absence of opposing proof, the fact of actual payment of interest might be inferred.” (Sec. 122,1 vol.)
The case of Searle v. Barrington is recognized as a case sustaining this doctrine. In that case the bond was executed in the year 1697 and the obligor died in the year 1710. The obligee died shortly after, and when an action was instituted on *401 the bond, in order to repel the presumption of payment by lapse of time, two indorsements of credits made by the obligee himself were admitted as evidence. (See notes to Greenleaf, volume 1, page 154.)
The same rule has been followed in subsequent decisions, and such evidence has been admitted in this state, but we have found no reported ease here or elsewhere in which the doctrine has been carried so far as to hold such evidence sufficient to suspend the running of the statute when the fact of payment has been controverted by the payor. In the case of Hopkins’s adm’r v. Stout (reported in 6 Bush), there was no denial of the fact that the payment had been made, and this court adjudged, the payment being made by the debtor, the prima facie presumption is that the indorsement of the credit was made with his privity. And in the still later case of English v. Wathen (9 Bush, p. 387), the payment and indorsement of credits were alleged in the petition and not controverted by the answer. So in each of the cases referred to the fact of payment stood undenied.
In the present case the appellees say no payment was ever made by the intestate, and by a proper pleading make that issue with the appellant.
The party in possession of the note must be presumed to know when and by whom the payment was made and the credit entered, and the mere indorsement of a credit, although apparently against the interest of the obligee at the time it purports to have been made, can not be regarded as sufficient evidence of payment by the obligor when that fact is controverted by answer.
As a general rule, all alterations, erasures, or mutilations of a paper upon which a liability is sought to be established against those who were originally bound must be explained by the holder when the fact of mutilation, erasure, or alteration is raised by the pleadings and established by the proof. The *402 holder must account for the alteration if called upon to do so by the issue raised. (Elbert v. McClelland, 8 Bush.)
Upon a plea of non est factum to a note by one of the obligors, if it appears that the name of a co-obligor has been torn off, and the note otherwise mutilated, the onus of explaining the alteration or mutilation is with the party holding the note, and the fact that the erasure of the name o“f an obligor is against the interest of the holder of the paper is not sufficient to raise the presumption that the party in possession of the note is in ignorance of the manner in which the mutilation took place. "While it is against the interest of the holder to erase the name of one of the obligors, the effect of the erasure, if the burden of proof is not on the holder in such a case, is to make the obligor whose name is still on the paper liable for the whole debt in the event of his failure to show how or by whom the alteration or mutilation was made. The same result would follow in an action on a note by the payee, with credits indorsed, where the payor relies on the statute of limitations. If the burden is upon the latter, he is made liable for the debt, unless he can explain the changed condition of the paper after it has been signed by him when the indorsement must have been made while in the possession of the holder or those under whom he claims. He is denied the benefit of the presumption that the holder must know why and how the credit was entered, and required to assume the burden of proof after negativing the payment, and when, from the very nature of the transaction, he is unable to account for the entry. Although he has denied the payment, he is told that he must be charged, for no other reason than that the party seeking to recover would not have made an indorsement against his own interest.
The adoption of such a rule would render the defense in such cases in almost every instance impracticable, and invite fraudulent indorsements of payments to defeat the operation of the statute.
*403 The safer rule is to require the holder in all cases to explain the indorsement or change in the paper when it must have been made after its execution, and where the effect of the indorsement or change in the paper, if properly made, is to bind the payor or continue his liability. While there is no reason for excluding such indorsements when they stand undenied, if controverted, some more satisfactory proof must be introduced in order to hold the party bound. A mere memorandum made by a party on a note or obligation in his possession can not, when the fact it purports to establish is denied, be admitted as testimony sufficient to create or continue the liability. There is the absence of all the ordinary tests for ascertaining the truth of the statement made, and to require the adverse party to rebut or explain it is not demanded by any consideration of public interests.
The judgment is therefore affirmed.