Vinson's Ex'xs v. Maynard.
Same v. Compton et al.
Compton v. Vinson's Ex'xs.

Feb. 29, 1944.

760

Chesley A. Lycan for Vinson's Ex'xs.

C. F. See, Jr., for Leonard, Chester and Ross Compton.

Clyde L. Miller for G. D. Maynard.

OPINION OF THE COURT BY CHIEF JUSTICE FULTON—
Affirming in part and reversing in part.

By deed of October 28, 1925, the appellee, G. D. Maynard, conveyed to Leonard Compton, Chester Compton and Ross Compton a garage building in Louisa, retaining a lien to secure payment of six promissory notes for $500 each, due in one, two, three, four, five and six years respectively. The first two notes were paid.

On April 10, 1928, Maynard sold the four remaining notes, amounting then to $2,300, to G. R. Vinson for $2,000, transferring them by unqualified endorsement. On October 8, 1928, the Comptons paid $476 on the note maturing on that date. No further payments were made, except a payment of twenty dollars which it is claimed by the executrices was made to them by Ross Compton and which was applied by them equally on the remaining four notes. The latter claim will later be discussed.

In certain consolidated actions, by procedure and pleading not necessary to mention, Vinson's executrices sought judgment on the unpaid notes against Maynard and the three Comptons. Since the notes were negotiated before maturity, they were barred by the five year statute of limitations and Maynard, being only an endorser, was discharged from liability by failure to give him notice of dishoner. To meet the bar of limitation and the discharge by failure to give notice of dishonor, the executrices pleaded a new promise to pay by Maynard after the limitation period and also pleaded a payment of twenty dollars to the executrices by the Comptons to lift the bar of limitation as to them.

Judgment was rendered in the consolidated actions, dismissing the petition as to Maynard and as to Leonard and Chester Compton, but awarding recovery against Ross Compton for one-third of the amount of the notes,

the recovery being adjudged a lien on the property inferior to a lien of the City of Louisa for taxes.

Three appeals from the judgment are before us, one by the executrices against Maynard, one by them against Leonard and Chester Compton, and the other by Ross Compton against the executrices, in which the latter also cross appeal from so much of the judgment as denied them a recovery against Ross Compton for the remaining two-thirds of the notes. The three appeals are considered in this opinion, the appeal against Maynard being considered first.

The evidence as to the new promise by Maynard was as follows. The executrices, who are the widow and daughter of Mr. Vinson, testified as to a conversation with Maynard: "Mother and I went in the Bank as he was coming out of the office with Mr. Kinstler, and I asked him about the Compton notes and he said the property was worth it. He said, 'do you want me to take the property?' He said he thought it was worth the debt; and I told him, with the street paving, I did not think it was, and that I did not want it. He said he would take the property or do something about it; that he would make satisfactory arrangements about it soon."

The daughter, Mrs. Hodge, shortly after this wrote Maynard a letter in which the only reference she made to the conversation was "you said something would be done about it." Following this letter, Maynard wrote her two letters, in neither of which was there anything from which such a promise could be inferred. In one of these letters he said, "Please check over your files. I believe you will find an agreement made by your father and I about these notes."

J. B. Kinstler, cashier of the bank, testifying about the conversation in the bank, said "As well as I remember he said he would either pay or make some arrangements to take care of them."

Maynard's version of the conversation was, "I told her I was surprised that the notes had not been paid, and that there ought to be something done about it and for her to look and see if she couldn't find an agreement that Mr. Vinson had with me." He testified that Vinson agreed to take the notes and look to the property and not to him and that there was a contract to that

effect, which was the agreement he referred to in his letter to Mrs. Hodge.

Since the passage of the Negotiable Instrument Act, providing, Section 3720b-109, KRS 356.109, that waiver of notice of dishonor may be made either before or after dishonor, it is the rule that a promise to pay by one released by failure to receive notice of dishonor is a waiver of such notice and the promise is enforceable though unsupported by any new consideration. Mechanics', etc., Bank v. Katterjohn, 137 Ky. 427, 125 S. W. 1071, Ann. Cas. 1912A, 439. And it is well settled that one under a moral, as well as a legal, obligation to pay a note becomes liable upon a new promise to pay made after the bar of limitation has become complete, the new promise creating a new obligation. It is equally well settled that in order to establish a waiver of notice of dishonor after discharge the circumstances or conversations relied on must be unequivocal and import a clear admission of liability or amount to a distinct promise to pay—waiver will not be inferred from doubtful language. Mechanics', etc., Bank v. Katterjohn, supra; Liberty Bank & Trust Co. v. Hand, 269 Ky. 342, 107 S. W. (2d) 285. And acknowledgment of a debt to lift the bar of limitation must be a distinct, unqualified, unconditional recognition of an obligation for which the person making the admission is liable. Marcum's Adm'x v. Terry, 146 Ky. 145, 142 S. W. 209, 37 L. R. A., N. S., 885; Thornton's Adm'r v. Minton's Ex'r, 250 Ky. 805, 65 S. W. (2d) 158. As said in the early case of Harrison v. Handley, 1 Bibb 443, and uniformly adhered to, "The acknowledgment from which the law is to raise a promise, contrary to the provisions of the statute, must be clear and express, where the mind is brought directly to the point—debt or no debt at the present time, not whether the debt was once an existing demand."

Viewed in the light of these authorities, we think the evidence failed to establish an unequivocal promise to pay by Maynard sufficient to lift the bar of limitation, even if his denial and explanation of the conversation be disregarded. The statement attributed to him by the executrices certainly contained no such unequivocal promise. Kinstler's version of this conversation was stronger in favor of the executrices than their own testimony, but even his testimony falls short of establishing an unequivocal promise to pay, since Maynard, ac-

cording to this witness, said "he would either pay or make some arrangements to take care of them." This was not an unequivocal promise to pay the arrangements he had in mind may have been other steps than paying the notes himself. In the Katterjohn case, supra, a promise to renew a note was held not to be an unequivocal promise to pay, since the promisor may have been willing to renew and not to pay. If a promise to renew is not sufficient, clearly the promise attributed to Maynard was insufficient. It is our conclusion that the chancellor correctly denied a recovery against Maynard.

The other two appeals may be disposed of together. The payment relied on to remove the bar of limitation as to the three Comptons was a payment of twenty dollars made to the executrices by Ross Compton in 1939. For some time after the property was conveyed to the Comptons they operated a garage therein as a partnership but the evidence establishes that the partnership terminated some years before 1939. Ross Compton continued to occupy the property, operating a garage and radio shop. The executrices owed twenty dollars for storage of a car in the garage and Ross Compton sent them a bill therefor. They delivered to him a check for twenty dollars in payment and he indorsed it and turned it over to the executrices. The latter testified that the check was turned over to them as a payment on the notes. Ross Compton denied this, claiming that he delivered the check in payment for meal. The evidence on this issue was squarely conflicting and was sufficient to sustain the chancellor's finding that the payment was made on the notes. This payment of the notes had the effect of an express promise to pay, Brown's Adm'r v. Osborne, 136 Ky. 456, 124 S. W. 405, and operated to lift the bar of limitation which had become complete when the payment was made. 34 Am. Jur. 268; 37 C. J. 1143. And, since no application of the payment was directed by Ross Compton, the executrices had the right to apply the payment to all four of the notes. Byington v. Baughman, 282 Ky. 130, 137 S. W. (2d) 1101. Further, Ross Compton, joint maker of the notes, was liable for the full amount of the notes, and the payment by him operated to lift the bar of limitation not merely as to one-third of the notes but as to the full amount thereof. Judgment should have been rendered against him accordingly.

It is contended by the executrices that the payment .by Ross ·Compton revived the notes against the other Comptons because the three were partners. But, even though it be conceded, arguendo, that a new promise or part payment by one partner is sufficient to revive the notes as against ·the other partners, the evidence established that the partnership had terminated long before the payment was made. Ross Compton, at the time of the payment, was only a joint and several obligor with the other Comptons ·and the payment by him did not operate to lift the bar of limitation against his co-obligors, there being nothing to show that they consented to the payment, directed it to be made or subsequently ratified it. 34 Am. Jur. 277. The chancellor correctly dismissed the petition and denied recovery as to Leonard Compton and Chester Compton.

The judgment is affirmed on all three appeals and is reversed on the cross appeal of the executrices against ·Ross Compton, with directions to enter a judgment against him for the full amount of the notes.