## Hutsell v. Current's Adm'r et al.

December 14, 1948.

R. W. Keenon for appellant.

Raymond Connell for appellees.

OPINION OF THE COURT BY CHIEF JUSTICE SIMS—Reversing.

Appellant, Mrs. Nancy Ralls Hutsell, brought this action against T. W. Current's administrator to recover a balance of $13,044.39 she alleged the decedent owed her. With the petition she filed her account containing various sums starting in April 1925 and ending in August 1932, which she averred she had furnished decedent, and that during the year 1944 this account was presented to him and he examined it, pronounced it correct, paid $100 thereon and then and there promised to pay the account in full. The answer as amended was a traverse followed by a plea of the statute of limitations and that there was no consideration for the alleged new promise.

Upon a trial the court directed a verdict in favor of appellees. Mrs. Hutsell's sole ground for reversal is that the evidence produced in her behalf was sufficient to take the case to the jury. This necessitates a review of the evidence. However, before considering the proof, it may be helpful to give a brief background of the parties and the principal witness.

The decedent, Mr. T. W. Current, owned some 500 acres of land in Bourbon County where he resided and was a highly respected farmer and citizen. A stipulation in the record shows that from 1921 Mr. Current carried a mortgage on his land in the neighborhood of $30,000. Mr. William Blanton, the attorney representing the administrator in the settlement of the estate, testified the inventory of the estate showed property of the value of $59,000, with a mortgage indebtedness of approximately $23,000.

Mrs. Hutsell was likewise a person of prominence and property. We gather from the record that there was a close and clandestine friendship between Mr. Current and Mrs. Hutsell and they communicated with each other and arranged for meetings through their friend and mutual attorney, Mr. Blanton. As Mr. Blanton was a close friend of both Mrs. Hutsell and Mr. Current, and as he was representing the latter's son and administrator in settling the estate, he declined to represent either party in this action.

It was evident to counsel on both sides that Mrs. Hutsell was not a competent witness under sec. 606(2) of the Civil Code of Practice to testify for herself

against decedent's estate, and she did not take the stand. Mr. John W. Jones, President of the North Middleton Deposit Bank where Mrs. Hutsell did business, was introduced to prove she had withdrawn certain amounts from that institution and her checks were filed as exhibits. But none of these checks were payable to Mr. Current, nor were any of them endorsed by him, and they shed no light upon this controversy.

Miss Jessie Brown signed a statement to the effect that she loaned Mr. Current $500 evidenced by a note which Mrs. Hutsell endorsed and paid at maturity. But when she testified, she stated that Mrs. Hutsell neither endorsed nor paid the note and that it was paid by Mr. Current. We surmise from her testimony that Miss Brown is a feeble old lady whose memory is not accurate. However that may be, certainly her testimony does not help Mrs. Hutsell.

Mr. Blanton is the only witness whose testimony can take the case to the jury. We have stated above his relationship to Mrs. Hutsell and Mr. Current. Mr. Blanton testified that in 1944, some six months before Mr. Current's death, that Mrs. Hutsell brought her itemized account to him with the request that he, without the knowledge of any third person, present it to Mr. Current. Mr. Blanton, without the aid or knowledge of his secretary, himself wrote Mr. Current to come to his office, which the latter did within a day or two. We quote from Mr. Blanton's testimony:

"Q. Now, when you presented this account to Mr. Current, what did he say to you? Did he examine it? A. Yes, sir.

"Q. And after he examined it, what statements, if any, did he make with reference to it? A. As I say, Mr. Current came in here either the next day or the second day after I wrote him and I handed him the paper which you have just handed me. He took it and looked it over and I repeated to him the conversation with reference to that paper that I had had with Mrs. Hutsell and before I had concluded saying what I had to say, he said, 'Well, Bill, the terms of our trade were that she let me have this money from time to time with the distinct understanding that if I outlived her, the

whole transaction was to be forgotten'; in other words, the debt was to be cancelled, and that 'if she outlived me, it was to be paid out of my estate and that as long as we both lived I was to pay an amount toward the interest of that amount of money.' And he then gave me $100.00 in cash with directions for me to turn it over to Mrs. Hutsell and told me that in July, which was six months hence, that he would give me another hundred.

"Q. Mr. Blanton, after he examined the account, what did he say as to whether or not it was correct or whether he wanted any change made? A. He made no objection to it. He said that she had loaned him some money to pay on a note. He said something about an insurance company or something of that nature. In other words, representing both parties and being more or less contact man between them, I didn't press him as to any particular item or any particular amount. He just said that they had had the arrangement, that she had loaned him the money and that if she died before him, that it was to be forgotten and that if she outlived him, the debt was to be paid out of his estate, and during his life he was to pay along on the interest of the amount due.

"Q. Now, were you then representing Mr. Current in this particular transaction? A. No, sir.

"Q. When did the conversation take place with reference to the death of Mr. Current? A. It was, I'd say, less than six months prior to his death. Right around the first of the year.

"Q. That conversation took place here in your office? A. Yes, sir.

"Q. Will you file this and mark it a part of your deposition and mark it Blanton No. 1? A. Yes, sir."

The rule is that a new promise to pay a debt barred by limitation creates a new obligation and the action must be brought on the new promise. Thornton's Adm'r v. Minton's Ex'r, 250 Ky. 805, 64 S. W. 2d 158. The instant action is on the new promise. An express acknowledgment of a debt once barred by limitation, when proved by clear and convincing evidence, raises an implied promise to pay the debt. Vinson's Ex'xs v. Maynard, 296 Ky. 759, 178 S. W. 2d 603; Muenninghoff v.

Friedlander, 294 Ky. 664, 172 S. W. 2d 457. Here, we not only have an express acknowledgment clearly proven, but furthermore, an express promise to pay the debt accompanied by a partial payment.

But appellees argue that the original transaction must be proven to establish a consideration for the new promise, which they contend was not done. We agree with this proposition of law that the original transaction must be proven. Dowell, etc. v. Dowell's Adm'r, 137 Ky. 167, 125 S. W. 283; Hendrix' Adm'r v. Hendrix, 96 S. W. 921, 29 Ky. Law Rep. 1084. However, the original transaction may be shown by the admission of the debtor to the creditor or some one acting for her but not to a stranger. Dowell, etc. v. Dowell's Adm'r. It was written in Martin v. Taylor's Ex'x, 285 Ky. 128, 147 S. W. 2d 70, 72: "If an account showing the original transaction is presented to a debtor and he acknowledges the correctness of the account, such acknowledgment constitutes substantive evidence proving the original transaction."

The above quotation from Blanton's testimony plainly shows that when he, at the request of Mrs. Hutsell, presented her account to Current, the latter acknowledged its correctness, paid $100 thereon with the promise that he would pay the balance. Blanton's testimony was certainly sufficient to take the case to the jury and to sustain a verdict if one be returned in favor of Mrs. Hutsell.

Appellees cite Meyer v. Zotel's Adm'r, 96 Ky. 362, 29 S. W. 28; Davis v. Strange, 156 Ky. 420, 161 S. W. 217; Frazer's Adm'rs v. Frazer, 13 Bush 397, 76 Ky. 397, as sustaining their position that the original transaction or debt was not proven, nor was the new promise. Without devoting the time and space necessary to an analysis of each of these cases, it will suffice to say that they in nowise militate against what we have here written.

For the reasons given, the judgment is reversed for proceedings consistent with this opinion.

Judge Rees dissents.