David LEVIN, Lewis S. Weiss and Harry W. Epstein, co-partners, trading as David Levin Company, Plaintiffs,

v.

DIAMOND STATE POULTRY COMPANY, Inc., a Delaware corporation, Defendant.

David LEVIN, Lewis S. Weiss and Harry W. Epstein, co-partners, trading as David Levin Company, Plaintiffs,

v.

David M. POLIN and Howard M. Polin, individually and as co-partners trading as Polin Poultry Company, Polin Poultry Farms, Inc., a Delaware corporation, Polin Feed Corporation, a Delaware corporation, Poultry Haulage Corporation, a Delaware corporation, P & A Feed Corporation, a Delaware corporation, King's Highway Corporation, a Delaware corporation, and Diamond State Poultry Company, Inc., a Delaware corporation, Defendants.

Civ. A. Nos. 1785, 1791.

United States District Court D. Delaware.

July 10, 1959.

Irving Morris, of Cohen and Morris, Wilmington, Del., for plaintiffs, William Ginsburg, Philadelphia, Pa., of counsel.

William Prickett, of Prickett and Prickett, Wilmington, Del., for defendants.

LAYTON, District Judge.

These are consolidated actions arising out of two claims by David Levin, Lewis S. Weiss and Harry W. Epstein, trading as David Levin Company, a firm of certified public accountants, against David M. Polin and Howard M. Polin individually, and as partners, trading as Polin Poultry Co., together with six corporations owned and controlled by the named individual defendants. Generally, hereafter, the plaintiffs will be called Levin and the defendants will be called the Polins.

The first cause of action (C.A.1785) seeks recovery for accounting services allegedly rendered the Polins on a per diem basis. This claim amounts to $4,308.78, of which the Polins admit owing $108.45. As to the balance ($4,200.33), the defense is that there was an agreement by Levin that payment would be contingent upon the recovery by the Polins of a claim against Allied Poultry Processors Company and that since no recovery was had, Levin is without remedy here.

The second cause of action (C.A. 1791) seeks recovery for accounting services rendered to the Polins on a year to year basis. The amount originally claimed was $11,231.56. After depositions had been taken, Levin amended to insert additional claims totaling $7,915.86. One defense to this action is that the agreement for Levin's services was not on a time and hour basis but on a fixed annual fee basis for the four years concerned. The Polins further contend that they made overpayments in each of these years and have filed a counterclaim representing the alleged overpayments. Other defenses

including the Statute of Limitations and accord and satisfaction are also advanced in this latter action.

 Levin's claim in C.A. 1785 (except for $108.45) depends upon whether or not his arrangement for fees was contingent upon the success of Diamond State Poultry Co., Inc., against Allied Poultry Processors Company. Levin himself suggested that action be taken. There was a meeting at his home in Philadelphia on a Sunday at which both Howard and David Polin were present. It was there, they testified (and Levin denied), that a contingent fee arrangement was made by Levin for his services. Both Levin and his wife denied that the time was in January or that the fee was contingent, but other evidence supports the Polins' version. First, there is Mr. Prickett's testimony as to David Levin's telephone call. Second, there is the letter by Levin to Howard Polin stating among other things, "Whether he told you or not I do not know but he did admit to me that I volunteered my services in the first place." Third, there is the strange circumstance that while Levin kept make-up sheets for every other service rendered the plaintiffs, he kept none in this instance.[1] Finally, there is Howard's action in discharging Levin after he saw Levin's bill for services dated April 20, 1955. This is consistent with the normal reaction of a person who feels that another has breached an agreement with him.

In summary, it is not essential that I believe either version of the testimony implicitly. Parenthetically, I will say that there is much testimony from both sides which I cannot accept as true. It is Levin's burden to prove his case by a preponderance of the evidence. This he has failed to do. Judgment for Levin in C.A. 1785 for $108.45 only.

We now come to C.A. 1791, as amended, which claims $19,147.22. This represents charges for services performed from September, 1948, to May, 1955. The claims were detailed in two Master Summaries prepared by plaintiffs in response to interrogatories demanding a bill of particulars. These summaries specify ten sums allegedly still due and owing after the crediting of certain payments against charges originally accrued:

| | | |
|---|---|---|
| (1) | $ 1648.36 | |
| (2) | 2673.36 | |
| (3) | 811.09 | |
| (4) | 353.85 | |
| (5) | 648.44 | |
| (6) | 2079.24 | |
| (7) | 3017.22 | |
| | | $11,231.56 |
| (8) | 2733.22 | |
| (9) | 2953.78 | |
| (10) | 2228.86 | |
| | | 7,915.86 |
| Grand Total | | $19,147.42 |

The Polins contend that the agreement for Levin's services was on a fixed annual fee basis and that overpayments were made as follows:

| Year | Agreed Upon | Paid | Overpayment |
|---|---|---|---|
| 1950 | $ 5000 | $ 6200 | $1200 |
| 1951 | 7500 | 9850 | 2350 |
| 1952 | 7500 | 8250 | 750 |
| 1953 | 7500 | 11400 | 3900 |
| Totals | $27500 | $35700 | $8200 |

---

1. Compare the summary PX 45 prepared after litigation was begun and PX 53A, a bill rendered prior to litigation, with the careful make-up sheets prepared and kept by Levin in every other phase of his relations with the Polins.

They allege that because of their poor bookkeeping, careless office methods in general and complete faith in Levin, they paid little attention to the amounts paid him until they suddenly realized that they had made payments substantially in excess of their agreement.

Initially, I will agree with the Polins' contention that they conducted their business in a haphazard manner. They were careless, their methods inefficient, and they had no proper bookkeeper. To an unusual degree they relied upon Levin. This was because Howard, in particular, stood in great awe of him. To Howard, Levin seemed to represent the acme of sophistication, polish and business acumen. Levin kept all their books and most of their checkbooks in Philadelphia, to some degree acted as a business advisor, had, in a sense, the run of their office, directed the dictation of Company letters there, and, in general, acted with a great deal more power than would be expected of the ordinary accountant for a business. It would appear also that Levin frequently was able to cajole Howard into paying larger fees than originally agreed upon.

■ But in my judgment the Polins were not so utterly careless, stupid or inept as they attempted to represent themselves. They struck me as shrewd, hard and energetic businessmen who, despite the obstacles of little education and small resources, had created a relatively large and prosperous business. In this case, they have the burden of proving by a preponderance of the evidence that they trusted Levin so completely and were so utterly indifferent to what was going on as to be unaware of payments to the extent of $8,200 in excess of agreed annual compensation over the several years involved. After considering all the testimony on this phase of the case, I conclude that the Polins have failed to meet their burden of proof.

Judgment for the plaintiffs on the counterclaim.

■ Defendants' other defenses in C.A. 1791 will now be considered. The principal of these is the Statute of Limitations. The ordinary Statute of Limitations is procedural and each forum, therefore, applies its own to the exclusion of any other. Rest.Conflict of Laws §§ 603, 604; Goodrich, Conflict of Laws § 85 (3rd ed. 1949). The applicable statute, therefore, is 10 Del.C. § 8106:

"* * * no action to recover a debt not evidenced by a record or an instrument under seal * * * shall be brought after the expiration of 3 years from the accruing of the cause of such action; subject, however, to the provisions of sections 8107–8109, and 8118 of this title."

Section 8107 excludes a mutual, running account from the operation of the Statute. I conclude that there was no such account here for the reason that all the charges were on one side. Jones v. Massey, Quarter Sessions, 1795, 1 Del.Cas. 63, Moore v. Morris, 1898, 1 Pennewill, Del., 412, 41 A. 889. Nor was there an open, running account between the parties, but, rather, a new contract each year as evidenced by Levin's normal method of billing.[2]

■ Each of the sums claimed will now be disposed of in order. The first, for $1,648.36, represents charges for work done in the fiscal year ended September 30, 1949. The bill was rendered November 28, 1949. The last payment by the Polins credited against it was on December 2, 1949. It is elementary that payment on account of a debt not yet barred by the Statute of Limitations will toll the Statute because of the new promise to pay implied therefrom. Willison on Contracts, (Rev. ed. 1936) §§ 174, 178; Rest.Contracts, § 86(2)(b). However, as stated in Barclay's Appeal, 1870, 64 Pa. 69, 72:

2. Levin's attempt to establish a running account by means of his Master Summaries prepared just before trial is not persuasive for they do not reflect his normal procedures during the periods here involved.

"But then it must plainly appear, and not be a matter of conjecture merely, that the payment was made on account of the very debt which is in dispute."

Also, in Hart v. Deshong, 1939, 40 Del. 218, at page 224, 8 A.2d 85, 87, the Court, Rodney, J., stated;

"Just as an acknowledgement must be direct and unconditional, so certain essentials are requisite in part payment. The debt must be pointed out and the intention to partly discharge that particular debt made clear, and there must be no surrounding circumstances to repel the implied promise to pay the balance."

Compare Renault v. L. N. Renault & Sons, Inc., 3 Cir., 1951, 188 F.2d 317. Since payments after December 2, 1949, were credited against other bills than the one from which the claim of $1,648.36 arises, the Statute bars this claim as of December 2, 1952.

As to the second sum claimed, $2,673.-36, there is convincing proof that this bill was satisfied. On the original bill appear the notations, "paid in full" and "2673.36 allowance." Moreover, the claim represents charges for work done in the fiscal year ended September 30, 1950, and the last payment credited against it was on February 19, 1951, with the result that the Statute of Limitations constitutes an additional defense.

The third sum demanded, $811.09, represents charges for work done in the fiscal year ended September 30, 1951, for which the bill was originally rendered April 15, 1952. Payments on January 1, 1953, and March 9, 1954, originally noted on that bill were finally credited against subsequent bills, as shown by typed notations on these later bills as well as plaintiffs' Master Summaries; so that the last payment specifically applied against this bill was on September 15, 1952. The $811.09 was repeated, however, on the July 17, 1953 bill and also on Levin's

statement of May 28, 1954, which purported to list all debts then due and owing from previous years' contracts. Whether the Statute of Limitations bars this claim depends upon whether credits of $3,000 and $6,000 appearing on the July, 1953 bill, and $3,250 subtracted from a total including the $811.09 on the May, 1954 recapitulation statement, were applied against that sum and thereby tolled the Statute. Plaintiffs argue that they were.

In my judgment, they were not. Plaintiffs' Master Summaries show the first two payments credited solely against the bill for work in the year ending September 30, 1952, the year following that in which the $811.09 accrued, and the $3,250 credited solely to the bill for work in the next year. These Master Summaries, prepared as they were after the institution of litigation, are self-serving. But they may, and in my judgment do, constitute admissions as to the disposition of certain payments. Nor will repeated billings in subsequent years serve to toll the Statute. Inasmuch as there were no payments applied against this claim after September 15, 1952, the Statute of Limitations became a bar on September 15, 1955.

In my opinion, the next three sums claimed, $353.85, $648.44 and $2,079.24, should be awarded to Levin. No substantial defense is raised to the first two. As to the third, the only defense is a partial one that because much of the work was done in Sussex County, Delaware, Levin is entitled to payments based on rates prevailing there, rather than Philadelphia rates. However, much of the work was also done in Philadelphia. Levin's offices are there. He is a Philadelphia accountant and, by employing him, the Polins benefited from the advantages of a large office and metropolitan experience. Plaintiffs are entitled to Philadelphia rates.

As to the seventh sum claimed, $3,017.-22, the defense sought to be asserted is accord and satisfaction. The Polins argue that an agreement was reached that

certain payments would constitute payment in full of the sums due plaintiffs from the various defendant corporations, and that this agreement was carried out. However, the proof is inconsistent with the alleged agreement. The dates on the checks allegedly evidencing fulfillment of the agreement do not accord with the dates alleged to have been agreed upon. The defendants have not proved by a preponderance of the evidence that there was such an agreement; nor, even if there were, that it was ever carried out.

The eighth sum claimed, however, $2,733.22, is barred by the Statute of Limitations. It represents work done in the year ended December 31, 1951. The original billing was on April 15, 1952, and the unpaid balance appeared on the bill of July 16, 1953. Credits dated August 6, 1953, totaling $2,400 were noted on this latter bill, as well as others in September, 1954, totaling $1,750. The September payments were clearly intended by the Polins to apply against charges accruing subsequent to 1951, as evidenced by notations on some of the checks and a letter covering the others. Levin's Master Summaries show these credits as well as the $2,400 payment specifically and solely credited to the bill for the year following that in which the $2,733.22 accrued.[3] Therefore, these payments did not toll the Statute as to this sum and it runs from the date of the last payment applied against it, May 20, 1952.[4] The claim is barred as of May 20, 1955.

The last two items claimed are allowed to Levin. The Polins urge certain inferences from the fact that these claims were first asserted ten months following the institution of the suit, but under the facts these inferences are not justified. Again, the partial defense concerning prevailing rates is not sound.

The plaintiffs are entitled to judgment in the amount of $11,389.84, as follows:

| | | |
|---|---|---|
| C. A. 1785 | | $ 108.45 |
| C. A. 1791 | (4) | $ 353.85 |
| | (5) | 648.44 |
| | (6) | 2079.24 |
| | (7) | 3017.22 |
| | (9) | 2953.78 |
| | (10) | 2228.86 |
| | | $11,281.39 |
| Grand Total | | $11,389.84 |

3. Despite an equivocal statement in defendant's brief that the Statute runs from the July, 1953 bill, the original billing for this sum was in April, 1952, and only the unpaid balance of that bill appeared on the July, 1953 statement.

4. We therefore do not reach the question of whether the amended complaint of December 26, 1956, is considered filed as of the date of the original complaint. February 16, 1956, under Rule 15(c) of the Federal Rules of Civil Procedure, 28 U.S.C. for only if the payments in August, 1953, tolled the Statute would this question of relation back become important.