**Mary McCarron SNAVELY, Plaintiff,**

v.

**The AUTOMOBILE INSURANCE COMPANY OF HARTFORD, CONNECTICUT, d/b/a Aetna Life and Casualty, Defendant.**

Superior Court of Delaware,
New Castle County.

Submitted Aug. 26, 1981.

Decided Sept. 29, 1981.

Michael Joseph of Priestley & Joseph, Wilmington, for plaintiff.

Mary Pat Trostle of Biggs & Battaglia, Wilmington, for defendant.

TAYLOR, Judge.

## I

Plaintiff carried PIP insurance coverage issued by defendant. On June 4, 1978 plaintiff was injured in an automobile accident. Defendant paid plaintiff's medical bills for the period through August 22, 1978 and paid plaintiff's claim for lost earnings through September 9, 1978. Plaintiff returned to work on September 11, 1978. On October 9, 1978 plaintiff requested that payments for lost wages be resumed. The resumption of lost wage payments was denied by defendant and plaintiff was informed of defendant's position. This suit was filed August 7, 1980. Therefore, the suit was filed more than two years after plaintiff's automobile accident and less than two years after lost wage payments and the refusal to make further lost wage payments.

## II

In *Nationwide Ins. Co. v. Rothermel*, Del. Supr., 385 A.2d 691 (1978), the Supreme Court held that the statute of limitations which governed claims under no-fault personal injury protection coverage is the two-year statute of limitations specified in 10 *Del.C.* § 8119. In *Rothermel* the automobile accident occurred March 22, 1972, and suit was filed March 5, 1975. The claim in *Rothermel* was for medical expenses and lost earnings, as here. The issue specifically addressed in *Rothermel* was whether the three-year general statute of limitations found in 10 *Del.C.* § 8106 applied or whether the two-year statute of limitations applicable to personal injury claims, found in 10 *Del.C.* § 8119 applied. The majority held that a claim under PIP coverage should be harmonized with the corresponding subrogation rights of the insurer against the tort feasor, and that since a claim against the tort feasor was subject to the two-year limitations period commencing from the time of the accident, the PIP claim should be subject to an identical period of limitations.

■ As the majority *Rothermel* Opinion noted, in applying 10 *Del.C.* § 8119, the two-year statutory period runs from the date of the accident even though the damages include medical expenses which were incurred long after that date and lost earnings which would have been earned after that date. If the matter were viewed ac-

cording to contract standards rather than tort standards, the argument that the statute of limitations could be applied on a segmented basis as each segment accrues would have appeal. In my judgment the Opinion of the majority of the Supreme Court precludes that position.

### III

█ Plaintiff's position is that the part payments made by defendant under the PIP coverage tolled the running of the statute of limitations. The first argument, namely, that payments made under the statute are required to be segmented is impliedly rejected by the majority Opinion in *Rothermel* which held that the personal injury aspect of the claim should override contractual and no-fault statutory considerations. The second contention is that the partial payment constitutes an acknowledgment of the debt and interrupts the running of the statute of limitations. For this proposition, plaintiff cites *Hart v. Deshong*, Del.Super., 8 A.2d 85 (1939). *Hart* involved an acknowledgment of a debt after the statutory period had run.

The language of 51 *Am.Jur.2d* Limitations of Actions § 363, p. 852, which plaintiff also cites, appears to support the proposition that the running of the statute of limitations may be tolled by a part payment before the statutory period has expired. However, an examination of the cases cited in support of that proposition do not support the proposition, except where provided by specific statute. *Cross v. Allen*, 141 U.S. 528, 12 S.Ct. 67, 35 L.Ed. 843, (1891) applied an Oregon statute which provided that the statutory period commenced with the last payment. *Vincent's Exrs. v. Maynard*, Ky. Supr., 296 Ky. 759, 178 S.W.2d 603 (1944); *Hiscock v. Hiscock*, Mich.Supr., 257 Mich. 16, 240 N.W. 50 (1932) and *Smith v. Davis*, N.C.Supr., 228 N.C. 172, 45 S.E.2d 51 (1947) dealt with the effect of payment after the

indebtedness had been barred by the statute of limitations.

The *A.L.R.* Annotations, 36 *A.L.R.* 346 and 156 *A.L.R.* 1082, which are cited in 51 *Am.Jur.2d* Limitations of Actions § 363, p. 852 in support of the above proposition dealt with the effect of payments on account. Payments due under the PIP coverage do not qualify as payments on an account since at the time the payments were made no other amounts were due.[1] No citation indicates that the principle which has been applied with respect to accounts is applied to other claims. I find no support for the proposition that payment made before the statutory period has expired extends the statutory period, except where a statute requires that result. Delaware by statute has adopted the proposition in the limited field of "a mutual and running account between the parties . . .", that the statutory period does not begin to run "while such account continues open and current." 10 *Del.C.* § 8108. Subject to that exception, Delaware has not adopted the proposition that a payment postpones commencement of or tolls the running of the statute of limitations. Delaware Courts have held on a number of occasions that the quoted provision of 10 *Del.C.* § 8108 does not apply where all the charges were on one side. *Jones v. Massey*, 1 Del.Cas. 63 (1795); *Moore v. Moore*, Del.Super., 41 A. 889, 890 (1898); *Brown v. Consolidated Fisheries*, D.Del., 165 F.Supp. 421, 423 (1955); *Levin v. Diamond State Poultry Company*, D.Del., 175 F.Supp. 851, 854 (1959). I conclude that the PIP payments which defendant made did not postpone the commencement of or toll the running of the two-year statute of limitations.

### IV

█ By letter memorandum plaintiff raised a further contention, based upon the decision in *Tucker v. Jarmon*, Del.Super., 79C–OC–7, Letter Opinion December 19, 1980 (Bifferato, J.).[2] In *Tucker*, this Court

---

1. The nature of an account is discussed in *Chrysler Corporation v. Airtemp Corporation*, Del.Super., 426 A.2d 845 (1980).

2. *Tucker* was a suit by the administrator of a passenger who was killed in a single automo-

held that the requirements of 10 *Del.C.* § 4317 apply where payments have been made under PIP coverage which is supplemental to automobile liability insurance. 10 *Del.C.* § 4317 provides that any insurer who makes an advance or partial payment to an injured person under liability insurance as defined in § 906(a)(2) of Title 18

shall at the time of the payment notify the recipient in writing of the statute of limitations applicable to such injury or death. Failure to provide such written notice shall operate to toll any applicable statute of limitations or time limitations from the time of such advance or partial payment until such written notice is actually given.

Defendant contends that *Tucker* is inapplicable to this case because *Tucker* involved a passenger in the insured automobile, while the present case involves an insured driver. The distinction which defendant would make is that *Tucker* held that the PIP payment to a passenger who was not a named insured was a form of liability insurance payment, while a payment to an insured could not be construed to be coverage which is "supplemental to automobile liability insurance". *Tucker* did not rest its holding upon the fact that the insured driver might be liable to the passenger. *Tucker* considered the applicability of § 4317 to PIP payments without distinguishing between driver or passenger or between a named insured and a passenger, pointing out that no-fault coverage is applied "without regard to negligence or fault". *Tucker* reached the unqualified conclusion that "when one automobile insurance policy includes both liability coverage and no-fault

coverage, the no-fault is supplemental and incidental to the mandatory liability insurance coverage". This conclusion is in harmony with the definition in 18 *Del.C.* § 906(a)(2) which includes "provision of medical, hospital, surgical, disability benefits to injured persons ... irrespective of legal liability of the insured, when issued as an incidental coverage with or supplemental to liability insurance".[3] Since 10 *Del.C.* § 4317 specifically refers to the definition found in 18 *Del.C.* § 906(a)(2) it includes benefits "irrespective of legal liability of the insured, when issued as an incidental coverage with or supplemental to liability insurance". That definition which refers to "injured person" and excludes consideration of legal liability applies to an injured insured driver as well as other injured persons. Based upon *Tucker* and the considerations discussed herein 10 *Del.C.* § 4317 applied to the payments made to plaintiff by defendant and the failure to give the notice required under that section prevented the statute of limitations from running. Accordingly, defendant's motion for summary judgment based on statute of limitations is denied.

IT IS SO ORDERED.

---

bile accident. The defendants were the minor driver of the automobile and his father. Defendants moved for summary judgment on the ground that suit was not filed within two years after the accident and was barred by 10 *Del.C.* § 8107 and § 8119. Plaintiff contended that since defendant's insurer had paid medical claims and funeral expenses pursuant to no-fault PIP coverage, 10 *Del.C.* § 4317 tolled the *running of the statute of limitations* because the notice required under that section had not been given. This Court held that PIP payments satisfied the requisites of 10 *Del.C.* § 4317 and that *the suit was not barred.*

3. § 906 was enacted July 3, 1968 as a part of a modernized general insurance code and was the product of extensive studies. It is noted that beginning in 1965 the subject of providing prompt limited insurance protection regardless of fault for the victims of automobile accidents had been under consideration in this country. Woodroof *Automobile Insurance and No-Fault Law* §§ 11:27–11:33, pp. 327–332. It would *seem probable that this broad definition was designed to anticipate coverage of the type which is now provided under* 21 *Del.C.* §·2118.